UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEVIN DAMION CRICHLOW,

                              Plaintiff,

              -against-

ACTING COMMISSIONER ANTHONY J.
ANNUCCI DOCCS, et al.,

                              Defendants.

---

**MEMORANDUM OPINION
AND ORDER**

18-CV-03222 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Kevin Damion Crichlow ("Plaintiff"), proceeding *pro se*, is a chronic litigant known to the federal courts throughout New York State.[1] The Third Amended Complaint ("TAC")—the operative pleading, representing Plaintiff's fourth attempt at satisfying Federal Rule of Civil Procedure 8(a)(2) since this case was first filed in April 2018—spans 33 handwritten pages, refers to over 30 incidents spanning back to November 2014, and names 45 Defendants. (Doc. 175, "TAC"). Plaintiff seeks relief under 42 U.S.C. §§ 1981, 1983, 1985, 1986, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.* (*Id.* at 1).

---

[1] A search of Plaintiff's name in the ECF systems of the federal trial courts throughout New York State reveals, *inter alia*, the following dockets: (1) *Crichlow v. Guzman*, No. 22-CV-06031 (W.D.N.Y.); (2) *Crichlow v. New York State Dep't of Corrs. & Cmty. Sup.*, No. 21-CV-00692 (N.D.N.Y.); (3) *Crichlow v. New York State Dep't of Corrs. & Cmty. Sup.*, No. 20-CV-08788 (S.D.N.Y.); (4) *Crichlow v. Annucci*, No. 17-CV-06351 (W.D.N.Y.); (5) *Crichlow v. Fischer*, No. 15-CV-06252 (W.D.N.Y.); (6) *Crichlow v. Crowley*, No. 15-CV-06587 (W.D.N.Y.); (7) *Crichlow v. Gawronski*, No. 14-CV-06676 (W.D.N.Y.); (8) *Crichlow v. Crowley*, No. 13-CV-06624 (W.D.N.Y.); (9) *Crichlow v. Fischer*, No. 12-CV-07774 (S.D.N.Y.); (10) *Crichlow v. Fischer*, No. 11-CV-00883 (S.D.N.Y.); (11) *Crichlow v. Horn*, No. 09-CV-09596 (S.D.N.Y.); (12) *Crichlow v. Butchen*, No. 09-CV-04398 (E.D.N.Y.); and (13) *Crichlow v. Horn*, No. 07-CV-07685 (S.D.N.Y.).

Pending presently before the Court is a partial motion to dismiss the TAC filed by: **(1)** Anthony J. Annucci ("Annucci"); **(2)** Dr. Jeffrey Arliss ("Arliss"); **(3)** C.O. Michael Makowksi ("Makowski"); **(4)** Sgt. Timothy McCoy ("McCoy"); **(5)** Capt. Gary Sipple ("Sipple"); **(6)** Sgt. William Cole ("Cole"); **(7)** Warden William Keyser ("Keyser"); **(8)** C.O. Timothy Fitzpatrick ("Fitzpatrick"); **(9)** Deputy Edward Burnett ("Burnett"); **(10)** Lt. William Holloran ("Holloran"); **(11)** C.O. Mark Puerschner ("M. Puerschner"); **(12)** C.O. Edward Puerschner ("E. Puerschner"); **(13)** Nurse Floyd Darbee ("Darbee"); **(14)** C.O. Earl Jacobs ("Jacobs"); **(15)** C.O. Michael Terk ("Terk"); **(16)** Deputy Christopher Karson ("Karson"); **(17)** Lt. Wayne Jordan ("Jordan"); **(18)** C.O. George Gilmour ("Gilmour"); **(19)** C.O. Michael Kohler ("Kohler"); **(20)** Dr. Richard Skseveland ("Skseveland"); **(21)** C.O. Kyle Layton ("Layton"); **(22)** C.O. David Buchanan ("Buchanan"); **(23)** Sgt. Renee Askew ("Askew"); **(24)** Sgt. Van Fuller ("Fuller"); **(25)** Dr. Yelena Korobkova ("Korobkova"); **(26)** C.O. James Moshier ("Moshier"); **(27)** Dr. Janice Wolf ("Wolf"); **(28)** Dr. Mikhail Gusman ("Gusman"); **(29)** Nurse Sandra Proulx ("Proulx"); and **(30)** Nurse Lisa LaPenna ("LaPenna," and with the other twenty-nine individuals identified, "Moving Defendants"). Moving Defendants filed their motion on May 20, 2022. (Doc. 225; Doc. 226, "Def. Br."). Plaintiff responded on July 5 and July 11, 2022 with: (1) a 5-page "Affidavit in Opposition(s) of Motion(s) & Memorandum of Law(s);" (2) a 248-page (inclusive of attachments) "Opposition(s) of Motion(s) Rule 56 → Statement;" and (3) a 27-page "Declaration Part II of Motion Plaintiffs to Respond to File Opposition 3rd Amended Complaint Newly Discovered Evidences." (Doc. 238; Doc. 239; Doc. 240). Moving Defendants filed a reply brief in further support of their motion on July 19, 2022. (Doc. 242, "Def. Reply").

For the reasons set forth below, Moving Defendants' motion is GRANTED.

## BACKGROUND

The Court limits its discussion only to potentially timely allegations (i.e., those arising at least after April 6, 2015).[2] Cleaving untimely incidents from the discussion leaves 18 separate events for consideration, which are addressed chronologically *infra*.[3]

I.   April 13, 2015 (Deliberate Indifference)

Arliss denied Plaintiff surgeries ordered by somebody on October 17, 2014. (TAC at 19).

II.   April 19, 2015 (Excessive Force, Failure to Intervene)

At approximately 08:45 a.m., Sipple, Makowski, Cole, McCoy, and Fitzpatrick used a "dog strap" on Plaintiff. (*Id*.). Plaintiff claims that he was escorted by Makowski, who punched Plaintiff in the face while the others present watched. (*Id*.). Plaintiff alleges that Makowski "pull[ed] so hard" on the strap that bones popped out of joints and nerve damage resulted. (*Id*.).

---

[2] The initial pleading is undated. (Doc. 2). The envelope within which the Complaint was mailed to the Court, however, is postmarked April 9, 2018. (*Id*. at 8). The motion to proceed *in forma pauperis* ("IFP"), which presumably arrived in the same envelope as the Complaint, was dated for signature on April 6, 2018. (Doc. 1). The mailbox rule instructs therefore that the Complaint be deemed filed on April 6, 2018. *See Ramrattan v. New York*, No. 22-CV-00025, 2022 WL 1301840, at *2 n.4 (N.D.N.Y. May 2, 2022) (explaining that "[u]nder the prison mailbox rule, the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumed to be the date that the complaint was signed" (internal quotation marks omitted)). The farthest back any potential claims may reach is three years from the date of filing. *See, e.g.*, *Warren v. Sawyer*, No. 15-CV-00591, 2016 WL 1558460, at *3 (N.D.N.Y. Apr. 15, 2016), *aff'd*, 691 F. App'x 52 (2d Cir. 2017); *Hernandez v. City of New York*, No. 21-CV-02397, 2022 WL 2047577, at *3 (S.D.N.Y. June 7, 2022); *Paige v. Police Dep't of City of Schenectady*, 121 F. Supp. 2d 723, 726 (N.D.N.Y. 2000), *aff'd*, 264 F.3d 197 (2d Cir. 2001); *Blankman v. Cty. of Nassau*, 819 F. Supp. 198, 206 (E.D.N.Y. 1993), *aff'd*, 14 F.3d 592 (2d Cir. 1993). While statute of limitations is usually an affirmative defense that must be pled and proved, it may be the reason claims for relief are dismissed on a Rule 12(b)(6) motion or *sua sponte* by the Court under 28 U.S.C. § 1915(e)(2)(B). *See Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015); *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011); *Walker v. Flynn*, No. 22-CV-0400, 2022 WL 2304169, at *5 n.5 (N.D.N.Y. June 27, 2022), *adopted by* 2022 WL 2789355 (N.D.N.Y. July 15, 2022). As the defense is clear from the face of the TAC, any claims arising before April 6, 2015 are dismissed *sua sponte*. 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

[3] This recitation does not include all incidents occurring after April 6, 2015 for the simple fact that certain incidents are plainly insufficient to state a claim for relief of any kind. 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Lee v. Colvin*, No. 15-CV-01472, 2017 WL 486944, at *5 (S.D.N.Y. Feb. 6, 2017) ("The Court commends to Plaintiff the observation . . . that [j]udges are not like pigs, hunting for truffles buried in briefs." (internal quotation marks omitted)).

III.   <u>May 15, 2015 (Conditions of Confinement and Denial of Medical Care)</u>

Plaintiff and other inmates complained about showers being too hot. (*Id*. at 21). Plaintiff maintains that he "suffer[ed] skin swelling" that "fill[ed] up with pus," and could not take a shower. (*Id*.). Plaintiff insists that Makowski, Fitzpatrick, Gilmour, Cole, and McCoy knew about the injuries from their own observations and "face to face reports," but that these men refused to allow Plaintiff to seek medical treatment. (*Id*.).

IV.   <u>May 29, 2015 (Excessive Force, Failure to Intervene)</u>

At about 09:00 a.m., Makowski and Fitzpatrick searched Plaintiff's cell. (*Id*. at 21). About two hours later, at 11:00 a.m., Burnett came to Plaintiff's cell and advised that Makowski and Fitzpatrick were going to "run in there [(i.e., Plaintiff's cell)] and br[eak] [Plaintiff's] fucking neck." (*Id*.). At that point, Fitzpatrick entered the cell and hit Plaintiff "so hard [with] bulletproof shields" that he ended up suffering a concussion, bleeding from the forehead, and a lump the "size of a baseball." (*Id*. at 22). Plaintiff was slammed "violently to the floor," at which point he was beaten all over his body by M. Puerschner, Makowski, and "6 other John Does."[4] (*Id*.).

V.   <u>May 30, 2015 (Deliberate Indifference)</u>

At about 09:00 a.m., Deputy Superintendent Gail Williams ("Williams") and Fitzpatrick denied Plaintiff emergency sick call.[5] (*Id*. at 23). Plaintiff says that he felt lightheaded and passed out. (*Id*.).

---

[4] There are various instances where Plaintiff mentions an actor—whether known or unknown—in the body of the pleading but failed to name them as a Defendant in the caption. Given Plaintiff's extensive experience as a *pro se* litigant, the Court presumes Plaintiff named only those individuals whom he intended to sue. *See generally Keesh v. Quick*, No. 19-CV-08942, 2022 WL 2160127, at *4 n.4 (S.D.N.Y. June 15, 2022) (explaining that "[t]he special solicitude due a *pro se* litigant depends upon that particular party's litigation experience, as 'the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented'" (quoting *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010))).

[5] Williams has not yet appeared in this action. (*See* Doc. 232; Doc. 233; Doc. 268).

VI.   <u>June 12, 2015 (Procedural Due Process)</u>

Plaintiff writes:

> [o]n or about 6.12.2015 at S.H.U. Cell 252, Plaintiffs filed a PREA complaint & grievances & O.S.I. from June 8th & 5th & two time on June 8, 15 a retaliation Plaintiffs was sexual assaulted 3-differents time & prior by C.O. Makowski. Defendants Lt. [Holloran] and Captin Sipple on Tier 2 & 3 hearing tape & deny reasonable accommodation headphones & pocket talker, Lt. [Holloran] is blackout on video-tape to cover up willful misconduct and due process violation in 1st, 8th, 14th Amendment.

(*Id*.).

VII.   <u>June 13, 2015 – June 15, 2015 (Procedural Due Process)</u>

Plaintiff insists that Jordan, Holloran, Burnett, Makowski, and Fitzpatrick denied Plaintiff hearing aids, a battery, a pocket talker, and headphones at a disciplinary hearing. (*Id*. at 24). These individuals refused Plaintiff the items because Translator Jason Gibson ("Gibson") allowed the deprivation. (*Id*.). Plaintiff claims that he was denied the devices "as retaliation" for grievances, "fabricated misbehavior reports," and participating in an "interview . . . with O.S.I." (*Id*.).

VIII.   <u>June 23, 2015 (Reasonable Accommodation)</u>

At 08:13 a.m., Makowski and M. Puerschner told Audiologist John Sherhan ("Sherhan") not to issue Plaintiff hearing aids, batteries, and headphones as "retaliation & revenge, in violation of" the ADA and Rehabilitation Act.[6] (*Id*. at 24-25). This refusal denied Plaintiff "the right to participation in [a] due process hearing" at some point. (*Id*. at 25).

IX.   <u>July 10, 2015 – July 16, 2015 (First Amendment Retaliation)</u>

At 07:30 a.m., presumably on one of the days in the above-identified timeframe, Makowski and M. Puerschner denied Plaintiff food "as . . . retaliation & revenge" in connection with unidentified grievances and "protected activities." (*Id*. at 25).

---

[6] Sherhan has not yet appeared in this action. (*See* Doc. 247; Doc. 249).

X.    July 29, 2015 (Failure to Protect)

Between 09:00 a.m. and 11:00 a.m., as Makowski, McCoy, and Coles were preparing another inmate for transport, Makowski told the inmate "to throw[] urine & feces on Plaintiff." (*Id.* at 25). Plaintiff, Gilmour, and Makowski all saw that the other inmate had "several cups of urine & feces," but Makowski said he "didn't care" if Plaintiff was doused in human excrement. (*Id.* at 25-26). Plaintiff asked "Group of Defendants" to take him a different way and "they refused" to do so. (*Id.* at 26). Both Plaintiff and his personal belongings were thereafter coated "with toxins & sour milk." (*Id.*). Plaintiff maintains that he suffered from, *inter alia*: double vision; painful swelling around his eyes; chronic headaches; conjunctivitis; and sensitivity to light. (*Id.*).

XI.    September 7, 2018 (Deliberate Indifference, Excessive Force, and Procedural Due Process)

At 08:00 a.m., Buchanan "squeezed [Plaintiff's] butt" and "forcibl[y]" touched Plaintiff's penis during a pat frisk. (*Id.* at 26). Plaintiff maintains that, when he protested, Buchanan "became belligerent." (*Id.*). Fuller covered up the incident. (*Id.*). Buchanan "fabricated [a] false misbehavior report & said we don't forget asshole." (*Id.*). Plaintiff reported the incident to Jordan. (*Id.*). Jordan had Plaintiff placed in keeplock for 30 days without a pocket talker. (*Id.*).

XII.    November 1, 2018 (Deliberate Indifference)

Plaintiff was stabbed by an unidentified prisoner. (*Id.* at 27). Moshier and Layton thereafter refused Plaintiff "emergency sick call." (*Id.*).

XIII.    November 2, 2018 (Deliberate Indifference)

Plaintiff "went to emergency sick call" and Darbee refused him the "right to notify senior staffs about puncture wound from ice pick injury." (*Id.* at 27). Darbee told Plaintiff to return to his cell, but he refused. (*Id.*). Presumably, when returning to his cell, Plaintiff encountered Askew. (*Id.*). Plaintiff told Askew what happened and Askew returned Plaintiff to the infirmary. (*Id.*).

XIV.   <u>November 15, 2018 (Excessive Force, Failure to Protect, and Deliberate Indifference)</u>

Plaintiff told Buchanan that he had been stabbed in D South Block. (*Id*. at 27). Buchanan

acknowledged the statement but escorted Plaintiff back to D South Block. (*Id*.). Plaintiff was then,

in front of Buchanan, attacked by the "same prisoners" who stabbed him previously. (*Id*.).

Buchanan, during the altercation, sprayed Plaintiff with an entire can of pepper spray. (*Id*. at 28).

Plaintiff suffered, *inter alia*, two broken fingers and a swollen hand, but "received no emergency

treatment" from Wolf. (*Id*.). Plaintiff was eventually escorted to a new housing unit and denied an

"emergency shower." (*Id*.). Plaintiff claims that he was unable to shower for approximately 29

hours and, as a result, was in "excruciating pain" the entire time. (*Id*.).

XV.   <u>November 18, 2018 (Procedural Due Process)</u>

Plaintiff appeared before Jordan for a hearing. (*Id*. at 28). Jordan threatened Plaintiff's

expected witness and denied him a hearing assistant. (*Id*.).

XVI.   <u>December 17, 2018 (First Amendment Retaliation)</u>

At about 07:30 p.m., Makowski and to C.O. Heather Weyandt ("Weyandt") came to

Plaintiff's cell and "tr[ied] to set [him] up" in "retaliation" for "beating [the] false fabricated felony

complaint." (*Id*. at 29).[7]

XVII.   <u>December 13, 2018 (Deliberate Indifference)</u>

Plaintiff required an "emergency operation on [a] cavity" but waited over three months for

treatment. (*Id*. at 29). Plaintiff "could not eat," suffering both "chronic pain" and "a violent

headache." (*Id*.). According to Plaintiff, "all" of his teeth are "rotten" and he has been diagnosed

with "chronic periodontal gums & tooths disease" in 2008. (*Id*.). Plaintiff alleges that Skseveland

"left a broken tooth" in his mouth, but somebody refused to escort him to have the issue rectified.

---

[7] Weyandt has not yet appeared in this action. (*See* Doc. 241; Doc. 243; Doc. 266).

(*Id*.). Plaintiff claims that he ultimately removed the tooth himself with "a tweezer with blunt tip & metal toenail clipper" after "27 days of suffering . . . ." (*Id*.).

XVIII.    January 14, 2019 (Deliberate Indifference)

Plaintiff saw Korobkova at 09:00 a.m. for nerve testing on his right hand and arm. (*Id*. at 30). Korobkova did not have Plaintiff's "folder or x-rays" for Plaintiff to review. (*Id*.). Plaintiff complains that Korobkova and "Nurse (L) Jane Doe (2)" provided inadequate care and "became belligerent & hostile & aggressive" toward him. (*Id*.). Plaintiff told Korobkova that his "pain pills" were not providing any relief. (*Id*.). Korobkova responded that Gusman and Wolf—citing budgetary concerns—indicated that they would not authorize an unspecified surgery or new pain pills. (*Id*.). Plaintiff avers that Gusman, Wolf, Korobkova, and Sherhan committed "willful misconduct" by canceling unspecified operations and appointments. (*Id*.).

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

9

do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).[8]

## ANALYSIS

There are myriad issues to address. The Court considers first Moving Defendants' arguments under Rule 12(b)(6). The Court thereafter evaluates any additional claims for relief that—while not addressed by Moving Defendants—must nevertheless be dismissed under 28 U.S.C. §§ 1915 and 1915A. The Court then concludes its analysis with consideration of Moving Defendants' request to revoke Plaintiff's IFP status.

### I.   Moving Defendants' Arguments Under Federal Rule of Civil Procedure 12(b)(6)

Moving Defendants present five general categories of argument for the Court's consideration. (*See generally* Def. Br.). These arguments are addressed *seriatim*.[9]

---

[8] As noted previously, the Court is mindful that "the special solicitude due a *pro se* litigant depends upon that particular party's litigation experience, as 'the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented.'" *Lawtone-Bowles v. U.S. Bank Nat'l Ass'n*, No. 19-CV-05786, 2021 WL 1518329, at *4 (S.D.N.Y. Apr. 16, 2021) (quoting *Tracy*, 623 F.3d at 102), *aff'd sub nom. Lawtone-Bowles v. Brown,* No. 21-1242-CV, 2022 WL 839280 (2d Cir. Mar. 22, 2022). Indeed, "granting 'experienced *pro se* litigants' the same solicitude due an inexperienced one 'would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents." *Gardner v. Koeningsman*, No. 21-CV-10185, 2022 WL 1058498, at *4 n.7 (S.D.N.Y. Mar. 30, 2022) (quoting *Shomo v. New York Dep't of Corr. Servs.*, No. 04-CV-00910, 2007 WL 2580509, at *3 (N.D.N.Y. Sept. 4, 2007)). Notwithstanding Plaintiff's extensive litigation history, the substantive conclusions reached herein would be reached even if the Court granted Plaintiff every conceivable benefit of being a novice *pro se* litigant.

[9] Moving Defendants, in addition to the arguments addressed herein, contend that a number of claims advanced under 42 U.S.C. § 1983 should be dismissed as time-barred. (Def. Br. at 9-10). The Court has already, *sua sponte*, dismissed all claims it considers untimely. (*See* discussion *supra.*).

A.  Category 1: Eleventh Amendment Immunity

The analysis begins with Moving Defendants' last argument: any claims pressed against them in their official capacities under 42 U.S.C. § 1983 must be dismissed by operation of the Eleventh Amendment. (*See* Def. Br. at 24-25). Whether this immunity argument is brought properly under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) is an unsettled question of law in this Circuit. *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 51 n.1 (2d Cir. 2020) ("Whether Eleventh Amendment immunity 'constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense' has not yet been decided by the Supreme Court or [the Second Circuit]." (quoting *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013))). Although Moving Defendants do not reference Rule 12(b)(1) as a ground for their motion to dismiss, the "distinction has no practical effect" in this case because whether brought under either subdivision, the Court considers on this motion "only the pleadings and the relevant state and federal law and has drawn all inferences in Plaintiff's favor." *Harrison v. New York*, 95 F. Supp. 3d 293, 313 (E.D.N.Y. 2015) (quoting *Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 191 n.6 (E.D.N.Y. 2013)).

The Eleventh Amendment directs that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language bars suits, even those arising under federal law, against a state, or against a state employee acting in his or her official capacity, by one of its own citizens. *Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("A suit against a state official in his or her official capacity is not a suit against the official,

but rather is a suit against the official's office . . . . As such, it is no different from a suit against the State itself.").

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-07953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original)). To that point, it is well-settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment.").

Any claims Plaintiff presses under 42 U.S.C. § 1983 against Moving Defendants in their official capacities are dismissed.[10]

B.  Category 2: Prerequisite of Personal Involvement Under 42 U.S.C. § 1983

Plaintiff's claims for relief proceed largely under 42 U.S.C. § 1983.[11] That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42

---

[10] Given this analysis, *any* § 1983 claim pressed in the TAC against *any* New York State employee in their official capacity is dismissed for the same reason. 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b)(2).

[11] Plaintiff characterizes the TAC as proceeding under various statutes. (*See* TAC at 1). The Court addresses the viability of claims outside the § 1983 context *infra*.

U.S.C. § 1983. "[T]his language . . . creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). The purported violations here stem from various Amendments. (*See, e.g.*, TAC at 1, 4).

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted); *see also Griffith v. Clarkstown Police Dep't*, No. 20-CV-06505, 2022 WL 1213452, at *5 (S.D.N.Y. Apr. 25, 2022); *Marcus v. Annucci*, No. 20-CV-06234, 2022 WL 280935, at *4-5 (S.D.N.Y. Jan. 31, 2022); *Ford v. Aramark*, No. 18-CV-02696, 2020 WL 377882, at *13-15 (S.D.N.Y. Jan. 23, 2020); *Ortiz v. Bloomberg*, No. 10-CV-09434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011). Simply being a supervisor is not enough to impute personal involvement onto a defendant. Liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

Moving Defendants argue that any claims made against Annucci, LaPenna, Proulx, Kohler, and Keyser under 42 U.S.C. § 1983 must be dismissed for lack of personal involvement. (Def. Br. at 8). The Court agrees that Annucci, LaPenna, Proulx, Kohler, and Keyser are mentioned nowhere in the TAC but its caption. (*See generally* TAC). Any § 1983 claims against Annucci, LaPenna, Proulx, Kohler, and Keyser are, therefore, dismissed.

C.  Category 3: First Amendment Violations

Construing the TAC liberally, there are three incidents where Plaintiff appears to raise a First Amendment retaliation claim. (*See* TAC at 21-22, 25, 29). Moving Defendants seek dismissal of these claims against Makowski, M. Puerschner, and Fitzpatrick. (Def. Br. at 18-20).

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Randle v. Alexander*, No. 10-CV-09235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (alteration in original)). An action is "adverse" in the prison context when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-03632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id.* (quoting *Davis*, 320 F.3d at 353). As to causation, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[] because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis*, 320 F.3d at 352 (internal quotation marks omitted), "[c]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted).

None of the three incidents withstand Moving Defendants' motion.

On May 29, 2015, Makowski and Fitzpatrick searched Plaintiff's cell in connection with a "prior sexual assault." (TAC at 21). Then, on some day between July 10 and July 16, 2015, Makowski and M. Puerschner refused to give Plaintiff breakfast "as retaliation & revenge" in connection with "earlier grievances [and] protected activities." (TAC at 25). Years later, on December 17, 2018, Makowski tried—but failed—"to set [Plaintiff] up" in "retaliation" for "beating [the] false fabricated felony complaint." (*Id.* at 29). Even under the most generous standards, without deciding whether Plaintiff has pled the first two elements (i.e., protected speech and adverse action), he has not pled causation in any of the foregoing scenarios. When it comes to causation, "a plaintiff must allege facts suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against him." *Cooper v. Annucci*, No. 18-CV-00762, 2020 WL 8474802, at *13 (N.D.N.Y. Nov. 9, 2020) (internal quotation marks omitted), *adopted sub nom. Cooper v. DeGraff*, 2021 WL 235946 (N.D.N.Y. Jan. 25, 2021). Simply stating, in conclusory fashion, that Makowski, Fitzpatrick, and M. Puerschner acted against Plaintiff because he engaged in a protected activity does not establish causation. *See Dorsey*, 468 F. App'x at 27; *Gunn v. Malani*, No. 20-CV-02681, 2021 WL 5507057, at *6 (S.D.N.Y. Nov. 23, 2021) ("[A] . . . retaliation claim must be supported by specific and detailed factual allegations and not stated in wholly conclusory terms." (internal quotation marks omitted)); *Vogelfang*, 889 F. Supp. 2d at 517.

Any First Amendment retaliation claims pressed against Makowski, Fitzpatrick, and M. Puerschner are dismissed.

15

D. Category 4: Fourteenth Amendment Violations

Moving Defendants seek dismissal of any procedural due process claims proceeding against them in connection with the hearings that occurred: (1) on June 12, 2015; (2) from June 13 and June 15, 2015; and (3) on November 18, 2018. (Def. Br. at 15-16).

"[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (quoting *Adams v. Annucci*, No. 17-CV-03794, 2018 WL 4608216, at *6 (S.D.N.Y. Sept. 25, 2018) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020). As to the first element, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Vogelfang*, 889 F. Supp. 2d at 510 (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)). An inmate's liberty interest is implicated by prison disciplinary proceedings only if the sentence "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017). As for the second element, the Second Circuit instructs that:

> [i]n a prison disciplinary hearing, due process rights provide that at a minimum, a prisoner is entitled to be confronted with the accusation, informed of the evidence against him and afforded a reasonable opportunity to explain his actions. More specifically, an inmate must receive advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions.

*Williams v. Korines*, 966 F.3d 133, 143 (2d Cir. 2020) (internal citations and quotation marks omitted).

16

None of the three subject incidents meet the standard for pleading a Fourteenth Amendment procedural due process claim.

With respect to the June 12, 2015 hearing, it appears that Plaintiff complains that he was denied headphones and a pocket talker. (TAC at 23). As for the hearing that took place from June 13 to June 15, 2015, Plaintiff alleges that Jordan, Holloran, Burnett, Makowski, and Fitzpatrick denied him hearing aids, a battery, a pocket talker, and headphones.[12] (*Id*. at 24). Assuming that Plaintiff identified a protected liberty interest in connection with either claim, he explained neither how lacking the aforementioned items impacted his ability to participate in the hearing or how their absence led to the deprivation of a liberty interest. (*See id*. at 23-24). As for the November 18, 2018 hearing, Plaintiff says Jordan threatened an expected witness and denied him an assistant. (*Id*. at 28). Even if the Court assumes that being denied a witness and an assistant are facts sufficient to plead the second prong (i.e., constitutionally insufficient process), Plaintiff does not identify a protected liberty interest of which he was deprived. (*See id*.).

The motion to dismiss procedural due process claims based on these incidents is granted. *See Bell v. Smith*, No. 17-CV-01357, 2018 WL 11219949, at *2 (N.D.N.Y. June 21, 2018); *Booker v. Griffin*, No. 16-CV-00072, 2018 WL 1614346, at *19 (S.D.N.Y. Mar. 31, 2018); *Dava v. City of New York*, No. 15-CV-08575, 2016 WL 4532203, at *7 (S.D.N.Y. Aug. 29, 2016)

---

[12] To the extent this incident could be construed as a separate First Amendment retaliation claim, it would fail—like the others discussed already—for want of causation. (*See* discussion *supra*).

E.  Category 5: Eighth Amendment Violations

The vast bulk of Plaintiff's allegations relate to different ways in which individuals violated the Eighth Amendment by providing insufficient (or depriving Plaintiff of) medical care.[13] Moving Defendants seek dismissal of these claims on behalf of Fuller, Fitzpatrick, Askew, Moshier, Layton, Darbee, Korobkova, Gusman, Arliss, and Skseveland, and Wolf. (Def. Br. at 10-15).

"The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 844 (1994)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104 (alteration in original)). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020).

The first prong is objective and requires that the alleged deprivation in medical care be "sufficiently serious." *Salahuddin*, 467 F.3d at 280 (quoting *Farmer*, 511 U.S. at 834). A deprivation in medical care is sufficiently serious if: (1) "the prisoner was actually deprived of adequate medical care;" and (2) "the inadequacy in medical care is sufficiently serious." *Id*. at 279-80. The latter inquiry "contemplates a condition of urgency that may result in degeneration or extreme pain." *Chance*, 143 F.3d at 702. If a plaintiff alleges that he received no medical care for his medical condition, "courts examine whether the inmate's medical condition is sufficiently

---

[13] Moving Defendants do not seek dismissal of "the excessive force claims against Makowski, Fitzpatrick, Supple, Cole, McCoy, M. Puerschner, Buchanan, or the sexual assault claim against Buchanan." (Def. Br. at 1 n.2).

serious." *Salahuddin*, 467 F.3d at 280 (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). If, however, a plaintiff acknowledges that he received some medical care related to the underlying condition, but that the care he received was inadequate, "the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id*. (quoting *Smith*, 316 F.3d at 185); *see also Smith*, 316 F.3d at 186 ("[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition considered in the abstract, that is relevant for Eighth Amendment purposes."). If a plaintiff alleges that his medical care was delayed, the court examines "whether the delay itself created a risk of harm." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (citing *Smith*, 316 F.3d at 185-86); *see also Thomas v. Morley*, No. 20-CV-07520, 2022 WL 394384, at *9 (S.D.N.Y. Feb. 9, 2022) (explaining that deliberate indifference claims may proceed against non-medical staff "where they 'intentionally deny[] or delay[] access to medical care.'" (quoting *Estelle*, 429 U.S. at 104-05 (alterations in original)). To determine whether a delay in treatment created a risk of harm, the "absence of adverse medical effects or demonstrable physical injury" are factors "that may be used to gauge the severity of the medical need at issue." *Valdiviezo*, 752 F. App'x at 32 (citing *Smith*, 316 F.3d at 187).

The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. *Id.* A defendant had a sufficiently culpable state of mind if he "acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (quoting *Salahuddin,* 467 F. 3d at 280).

This standard exists alongside a caveat: "a prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities." *Robinson v. Wolf-Friedman*,

No. 18-CV-02409, 2019 WL 4640236, at *6 (S.D.N.Y. Sept. 24, 2019) (internal quotation marks omitted). "Indeed, prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). "If a prisoner's course of treatment is one about which reasonable doctors could disagree, an Eighth Amendment claim will not ordinarily lie." *Dichiara v. Pataki*, No. 06-CV-06123, 2007 WL 749742, at *3 (E.D.N.Y. Mar. 7, 2007); *see also Sonds*, 151 F. Supp. 2d at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference.").

No claim for deliberate indifference to a serious medical need against Moving Defendants is viable and, therefore, each claim is dismissed.

Arliss, on April 13, 2015, refused Plaintiff operations for his "right hand & elbow" that were ordered by somebody else. (TAC at 19). Plaintiff provides no further information about the surgeries. (*See id.*). These "allegations concerning the denial of surgery are bare and do not establish that [Plaintiff] suffered from . . . sufficiently pressing and serious medical needs that warranted immediate surgery." *Vasquez v. City of New York*, No. 21-CV-01573, 2022 WL 2704763, at *9 (S.D.N.Y. June 17, 2022), *adopted by* 2022 WL 2704469 (S.D.N.Y. July 11, 2022). This claim fails on the first prong.

Fitzpatrick, on May 30, 2015, denied Plaintiff emergency sick call. (TAC at 23). Plaintiff says that he felt lightheaded and passed out. (*Id.*). Even if the Court assumes that fainting is a sufficiently serious medical condition for the objective prong of the analysis, Plaintiff offers no facts supporting the notion that Fitzpatrick knew of and disregarded a substantial risk that serious harm would result. (*See generally id.*). "It is not enough to show that [Fitzpatrick] lacked due care;

rather, Plaintiff must establish that the . . . conduct involved obduracy and wantonness in placing [his] health in danger." *Boomer v. Bentivegna*, No. 19-CV-04754, 2021 WL 1163658, at \*4 (S.D.N.Y. Mar. 26, 2021) (internal quotation marks omitted). This claim fails on the second prong.

Fuller, after Buchanan "squeezed [Plaintiff's] butt" and "forcibl[y]" touched Plaintiff's penis during a pat frisk on September 7, 2018, "covered the incident up." (TAC at 26). Construing this single sentence, in the broadest possible sense, as a claim for deliberate indifference to a serious medical need based on a delay of treatment, it provides no basis to proceed with a claim against Fuller. This claim fails on both prongs.

Layton and Moshier, on November 1, 2018, denied Plaintiff "emergency sick call" after he was stabbed by another inmate. (TAC at 27). Reading the pleading liberally, Plaintiff suffered a "puncture wound" caused by an "ice pick" and was taken to the infirmary on November 2, 2018. (*Id*.). These allegations, without more, fail to plead the existence of a sufficiently serious medical condition. *See Benitez v. Straley*, No. 01-CV-00181, 2006 WL 5400078, at \*12 (S.D.N.Y. Feb. 16, 2006) (concluding, on a motion to dismiss, that cuts on the plaintiff's lips and head, and "severe cuts" to his wrists—none of which required stitches—did not constitute an objectively serious medical condition under the Eighth Amendment); *Davidson v. Harris*, 960 F. Supp. 644, 648 (W.D.N.Y. 1997) (finding, at summary judgment, that "no reasonable person could find a wanton disregard or deliberate indifference of plaintiff's serious medical needs" where defendants delayed treatment of a non-life-threatening stab wound). This claim for fails on the first prong.

As for Darbee, on November 2, 2018, she denied Plaintiff the "right to notify senior staffs about [the] puncture would from [his] ice pick injury." (*Id*. at 27). Disregarding the fact that Plaintiff did not explain what Darbee did to prevent Plaintiff from telling other staff about his

injury, absolutely nothing about Plaintiff's interaction with Darbee concerns failure to address a serious medical need. (*See id*.). This claim fails on both prongs.

Following the interaction with Darbee, Askew—that same day, November 2, 2018—returned Plaintiff to the infirmary. (TAC at 27). Because Askew took Plaintiff to the infirmary, any conceivable claim that could proceed against her would fail on the second prong. *Cf. Banks v. Annucci*, 48 F. Supp. 3d 394, 409-10 (N.D.N.Y. 2014) (finding plaintiff's claim for deliberate indifference to a serious medical need against one defendant "contradicted" where that defendant provided him with a "test kit so that he could provide a fecal sample for further examination" in connection with claimed stomach problems).

Wolf, on November 15, 2018, rendered "no emergency treatment" after Plaintiff was attacked by inmates and Buchanan, left with two broken fingers and a swollen hand, and doused in pepper spray. (TAC at 27). Assuming that Plaintiff established the existence of a sufficiently serious medical need—and the Court does not reach that conclusion given the conclusory nature of the allegations—Plaintiff provides no factual predicate to infer that Fuller knew of and disregarded a substantial risk to Plaintiff's health. *See Porter v. Bunch*, No. 16-CV-05935, 2019 WL 1428431, at *10 (S.D.N.Y. Mar. 29, 2019); *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 274 (N.D.N.Y. 2018) ("Plaintiff's conclusory allegation that Fitzgerald refused to treat him or send him to a hospital fails to plausibly suggest that the defendant was deliberately indifferent to any serious medical need."). This claim fails on the second prong.

Skseveland, on December 13, 2018, "left a broken tooth" in Plaintiff's mouth after surgery. (TAC at 29). Assuming that Plaintiff pled facts supporting the position that this was a sufficiently serious medical condition, "[t]here is no allegation . . . suggesting that . . . [Skseveland] had any knowledge of the dental problems [Plaintiff] alleges." *Vazquez v. Parks*, No. 02-CV-01735, 2003

WL 1442087, at *12 (S.D.N.Y. Feb. 4, 2003), *aff'd*, 101 F. App'x 365 (2d Cir. 2004). This claim fails on the second prong.

Korobkova, on January 14, 2019, did not have items for Plaintiff's review at an appointment and—citing, *inter alia*, Gusman—advised Plaintiff that he would not receive an unspecified surgery or new pain pills "to save money." (TAC at 30). Korobkova, Gusman, Wolf, and others then cancelled an unspecified number of operations and appointments. (*Id.*). Without any further information, the allegations express the opinion that whatever specific issues Plaintiff had, the treatment received was inadequate. "[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference." *Washington v. Westchester Cty. Dep't of Corr.*, No. 13-CV-05322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014); *see also James v. Phillips*, No. 05-CV-01539, 2008 WL 1700125, at *7 n.1 (S.D.N.Y. Apr. 9, 2008) (observing that the cancellation of "one appointment is not sufficiently serious . . . under any theory"). These claims fail on both prongs.

By operation of the foregoing conclusions reached in each of the five argument categories discussed above, because the following Moving Defendants are mentioned (or not) in the TAC only in connection with the § 1983 claims dismissed, these individuals are dismissed from this action in their entirety: **(1)** Annucci; **(2)** LaPenna; **(3)** Proulx; **(4)** Kohler; **(5)** Keyser; **(6)** Arliss; **(7)** Darbee; **(8)** Askew; **(9)** Holloran; **(10)** Layton; **(11)** Moshier; **(12)** Fuller; **(13)** Wolf; **(14)** Skseveland; **(15)** Gusman; **(16)** Korobkova; and **(17)** Jordan.[14]

---

[14] Moving Defendants argue also, without applying the law to the facts alleged, that they are "entitled to qualified immunity because objectively reasonable officials in their positions could have believed that the actions they are alleged to have taken did not violate Plaintiff's constitutional rights." (Def. Br. at 21). Given the conclusions herein, the Court need not and does not address Moving Defendants' conclusory qualified immunity argument.

II.  _Sua Sponte_ Review Under 28 U.S.C. §§ 1915(e) and 1915A

Having adjudicated Moving Defendants' Rule 12(b)(6) motion, the Court examines the

viability of any remaining claims for relief under 28 U.S.C. §§ 1915(e) and 1915A.

Section 1915(e) directs, in pertinent part, "that when a plaintiff seeks to proceed [IFP], '(2)

. . . the court _shall_ dismiss the case at any time if the court determines that— . . . (B) the action . .

. (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief.'" _Trombley v. Oneill_, No. 11-

CV-0569, 2011 WL 5881784, at *1 (N.D.N.Y. June 15, 2011) (quoting 28 U.S.C. § 1915(e)

(emphasis added)), _adopted by_ 2011 WL 5881781 (N.D.N.Y. Nov. 23, 2011). Similarly, with

respect to prisoners specifically, the Court _must_ dismiss any "portion" of the pleading that "is

frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary

relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1). Both statutes

recite the same standard and apply where an inmate proceeds IFP. _Abbas v. Dixon_, 480 F.3d 636,

639 (2d Cir. 2007). In determining whether dismissal is appropriate under either law, the Court

"'must accept as true all factual allegations in the complaint and draw all reasonable inferences in

[the plaintiff's] favor,' and only dismiss where 'it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief.'" _Fusco v. Cuomo_,

No. 21-CV-01908, 2022 WL 347631, at *2 (S.D.N.Y. Feb. 4, 2022) (quoting _Cruz v. Gomez_, 202

F.3d 593, 596-97 (2d Cir. 2000) (alterations in original)). This analysis is also bound by the

requirement that the Court construe _pro se_ pleadings liberally to raise the strongest claims they

suggest. _See, e.g._, _Harris_, 572 F.3d at 72.

Moreover, "where, as here, a motion to dismiss has been made by some but not all

defendants, the Court can (and arguably should, so as to prevent piecemeal adjudication) consider

the viability of the plaintiff's remaining claims as well, including those asserted against unserved named defendants, and those asserted against John Doe defendants." *Cruz v. Hastings*, No. 20-CV-04392, 2022 WL 1050795, at *7 n.10 (S.D.N.Y. Jan. 31, 2022) (internal quotation marks omitted), *adopted by* 2022 WL 873197 (S.D.N.Y. Mar. 24, 2022); *see also Williams v. Novoa*, No. 19-CV-11545, 2022 WL 161479, at *10-13 (S.D.N.Y. Jan. 18, 2022).

First, the Court considers the viability of any claims connected to the events alleged to have occurred on May 15, 2015—that is, the claims about scalding showers. (TAC at 21). Construing the pleading to suggest either a claim for unconstitutional conditions of confinement or denial of medical care, the claims fail because Plaintiff did not plead facts establishing how each individual was personally involved in the events, aside from generalized group pleading. (*Id.*). Any claims arising out of this event are, therefore, dismissed. 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also, e.g.*, *Barnett v. Rockland Cty. Jail Matnice*, No. 22-CV-02755, 2022 WL 1775716, at *2 (S.D.N.Y. June 1, 2022); *Morley*, 2022 WL 394384, at *11; *Hendrix v. Annucci*, No. 20-CV-00743, 2021 WL 4405977, at *6 (N.D.N.Y. Sept. 27, 2021).

Second, the conclusions reached with respect to Moving Defendants' motion to dismiss mandates that the following individuals be dismissed for the same reasons as the dismissals granted above: **(1)** Weyandt; **(2)** Gibson; **(3)** E. Puerschner; **(4)** Karson; **(5)** Jacobs; **(6)** Terk; **(7)** Dr. Kevin Doe (identified as Dr. Kevin Setter); **(8)** C.O. Gavoronski (identified as C.O. Colin Gawronski); **(9)** C.O. Guiseppe (identified as C.O. Guiseppe Manocchio); **(10)** Williams; **(11)** Sherhan; **(12)** Nurse II (1) Jane Doe; **(13)** Jane Doe (2) Nurse; **(14)** John Doe (1) C.O.; **(15)** John Doe (2), C.O. (identified as C.O. Nicholas Townsend); **(16)** O.S.D.; and **(17)** W.C.F. These individuals are, therefore, dismissed from this action. 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

Third, upon review of the TAC, no claim has been stated under RICO, 42 U.S.C. §§ 1981, 1985, 1986, the ADA, or the Rehabilitation Act because, *inter alia*: (1) Plaintiff fails to meet the heightened pleading standard for RICO claims imposed by Federal Rule of Civil Procedure 9(b), *see generally Silvester v. Selene Fin., LP*, No. 18-CV-02425, 2021 WL 861080, at *2-5 (S.D.N.Y. Mar. 8, 2021); (2) nothing in the TAC suggests that anybody intended to discriminate against Plaintiff because of his race, as is necessary for a § 1981 claim, *see  Keitt v. Schun*, No. 11-CV-00438, 2014 WL 347053, at *3 (W.D.N.Y. Jan. 30, 2014); (3) any § 1985 claim is barred by the intracorporate conspiracy doctrine, *see Perkins v. Presley*, No. 18-CV-03590, 2022 WL 769339, at *10 (S.D.N.Y. Mar. 14, 2022); (4) having failed to state a § 1985 claim, no § 1986 claim exists, *see Grant v. Cty. of Suffolk*, No. 15-CV-04781, 2018 WL 816242, at *11 (E.D.N.Y. Feb. 9, 2018); and (5) there is no explanation how any failure to provide Plaintiff with reasonable accommodations deprived him of meaningful access to programs or activities under the ADA or Rehabilitation Act, *see Stewart v. City of New York*, No. 15-CV-04335, 2018 WL 1633819, at *3-5 (S.D.N.Y. Mar. 31, 2018). Any claims alleged under these statutes are dismissed. 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Crichlow v. Annucci*, No. 21-CV-00692, 2022 WL 179917, at *9 n.11 (N.D.N.Y. Jan. 20, 2022) ("Although the amended complaint references several federal statutes . . . plaintiff has failed to adequately allege which named defendants, if any, may have violated any of these laws, or explain how.").[15]

III.   Moving Defendants' Argument in Support of Revoking Plaintiff's IFP Status

The final issue for the Court's consideration is Moving Defendants' argument that Plaintiff's IFP status should be revoked under 28 U.S.C. § 1915(g). (Def. Br. at 22-24). That provision, referred to colloquially as the "three strikes" rule, instructs in pertinent part:

---

[15] The Court *sua sponte* dismissed all claims against two individuals named in the TAC—C.O. Holer and Captain Maxwell—on November 10, 2021. (Doc. 180).

> [i]n no event shall a prisoner bring a civil action or appeal a
> judgment in a civil action or proceeding under this section if the
> prisoner has, on 3 or more prior occasions, while incarcerated or
> detained in any facility, brought an action or appeal in a court of the
> United States that was dismissed on the grounds that it is frivolous,
> malicious, or fails to state a claim upon which relief may be granted,
> unless the prisoner is under imminent danger of serious physical
> injury.

28 U.S.C. § 1915(g). Moving Defendants identify four cases they believe qualify as strikes: (1)
*Crichlow v. Butchen*, No. 09-CV-04398, (E.D.N.Y. Nov. 20, 2009); (2) *Crichlow v. Fischer*, No.
11-CV-00883 (S.D.N.Y. Dec. 22, 2011) [hereinafter *Fischer-00883*]; (3) *Crichlow v. Fischer*, No.
12-1454 (2d Cir. Aug. 15, 2012); and (4) *Crichlow v. Crichlow*, No. 12-CV-08932 (S.D.N.Y. Feb.
21, 2013). (*See* Def. Br. at 23).

The Court has already found that *Butchen* does not qualify as a strike because "[a] partial
dismissal of a case based on § 1915(g) grounds does not constitute a strike in this District." (Doc.
71 at 3).[16] In a similar fashion, Judge Forrest dismissed the action in *Fischer-00883* because
Plaintiff failed to file an amended pleading. (*Fischer-00883*, Doc. 28). Judge Forrest explained:

> [a]s of this date, Plaintiff has failed to comply with the
> Court's order, has not filed a Second Amended Complaint
> and has not submitted any materials to show good cause to
> excuse such failure.
>
> Accordingly, it is hereby ORDERED that the Complaint is
> dismissed without prejudice; and
>
> It is FURTHER ORDERED that the Clerk of the Court is
> directed to terminate this action.

(*Id*. at 2-3). Dismissal without prejudice, based on the failure to file an amended complaint, does
not constitute a strike under § 1915(g). *See Toliver v. Colvin*, No. 12-CV-00227, 2016 WL
11258222, at *8 (W.D.N.Y. Sept. 28, 2016) ("The ultimate dismissal of an action for failure to file

---

[16] A copy of this decision is available on commercial databases. *Crichlow v. Annucci*, No. 18-CV-03222,
2020 WL 3127804 (S.D.N.Y. June 11, 2020).

27

an amended complaint has been held to be a dismissal for failure to prosecute which is not among

the grounds listed as strikes under § 1915(g).”), *adopted by* 2017 WL 547963 (W.D.N.Y. Feb. 10,

2017); *McNair v. Kelly*, No. 13-CV-00728, 2013 WL 4574247, at *1 (S.D.N.Y. Aug. 26, 2013)

(“[C]ourts in this Circuit have declined to find that . . . dismissal [for failure to prosecute]

constitutes a strike.” (internal quotation marks omitted)).

The motion to revoke Plaintiff’s IFP status is denied.

## <u>CONCLUSION</u>

In light of the foregoing, Moving Defendants’ partial motion to dismiss is GRANTED but

the request to revoke Plaintiff’s IFP status is DENIED.

Based upon the holdings and conclusions, only the following claims for relief against the

following individuals, in their individual capacities only, remain[17] in this action and will proceed

into discovery:

**(1)** April 19, 2015 excessive force/failure to intervene against Sipple, Makowski, Cole,

McCoy, and Fitzpatrick;

**(2)** May 29, 2015 excessive force/failure to intervene against Burnett, Makowski,

Fitzpatrick, and M. Puerschner;

**(3)** July 19, 2015 failure to protect against Makowski, McCoy, Coles, and Gilmour;

**(4)** September 7, 2018 excessive force against Buchanan; and

**(5)** November 15, 2018 excessive force and failure to protect against Buchanan.[18]

---

[17] Moving Defendants did not seek to dismiss any claims proceeding into discovery.

[18] With an eye toward clarity, the Court emphasizes that any individual named as a Defendant who has not yet been served *or* who has been served but has not yet appeared or responded to the TAC has been dismissed and need not file a response of any kind to the TAC.

Sipple, Makowski, Cole, McCoy, Fitzpatrick, Burnett, M. Puerschner, Gilmour, and Buchanan shall serve and file an Answer to the TAC on or before October 28, 2022.

An initial pretrial telephone conference in this matter shall take place at 2:00 p.m. on December 12, 2022. At the time of the conference, all parties shall call: (888) 398-2342; access code: 3456831. Defense counsel is responsible for ensuring Plaintiff's appearance at that conference. A Notice of Initial Conference shall be docketed shortly.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that any appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to: **(1)** terminate every named Defendant from this action except: (a) Sipple; (b) Makowski; (c) Cole; (d) McCoy; (e) Fitzpatrick; (f) Burnett; (g) M. Puerschner; (h) Gilmour; and (i) Buchanan; **(2)** terminate the motion sequence pending at Doc. 225; and **(3)** mail a copy of this Memorandum Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated:   White Plains, New York
            October 7, 2022

_____
PHILIP M. HALPERN
United States District Judge